**Hearing Date and Time: June 12, 2019 at 3:30 PM**
**Objection Deadline: June 5, 2019 at 4:00 PM**

**RAVERT PLLC**
Gary O. Ravert
116 West 23rd Street, Suite 500
New York, New York 10011
Tel: (646) 966-4770
Fax: (917) 677-5419

*Attorneys for JRK Capital, Inc.*

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br><br>GOSPEL WAY DELIVERANCE<br>MINISTRIES, INC.,<br><br>*Debtors.* | Chapter 11<br><br>Case No. 19-41850 (CEC) |

**NOTICE OF JRK CAPITAL, INC.'S MOTION TO LIFT THE AUTOMATIC STAY**
**PURSUANT TO SECTION 362(d)(1), (d)(2) AND (d)(4) OF THE BANKRUPTCY CODE**

**PLEASE TAKE NOTICE** that the attached motion entitled "JRK CAPITAL,

INC.'S MOTION TO LIFT THE AUTOMATIC STAY PURSUANT TO SECTION 362(d)(1),

(d)(2) AND (d)(4) OF THE BANKRUPTCY CODE" (the "Motion"), will be heard before the

Honorable Carla E. Craig, Chief United States Bankruptcy Judge, at the United States

Bankruptcy Court for the Eastern District of New York, 271 Cadman Plaza East, Brooklyn, New

York 11201 on June 12, 2019 at 3:30 PM.

**PLEASE TAKE FURTHER NOTICE** that objections, if any, to the Motion

must be filed with the Court and served on (i) the undersigned counsel and (ii) the Office of the

United States Trustee, U.S. Federal Office Building, 201 Varick Street, Suite 1006, New York,

NY 10014 in each case so as to be received no later than June 5, 2019 at 4:00 PM (New York).

Any response must set forth the grounds for and the facts supporting the response and must: (i)

identify the response by the name of the responding party, (ii) indicate the hearing date on the upper right-hand side of the objection, and (iii) bear the caption and case number of this case.

Dated: May 2, 2019
      New York, New York

RAVERT PLLC

By: /s/ Gary O. Ravert
    Gary O. Ravert
    116 West 23 Street, Fifth Floor
    New York, New York 10011
    Tel: (646) 961-4770
    Direct Fax: (917) 677-5419

*Attorneys for JRK Capital Inc.*

**RAVERT PLLC**
Gary O. Ravert
116 West 23rd Street, Suite 500
New York, New York 10011
Tel: (646) 966-4770
Fax: (917) 677-5419

*Attorneys for JRK Capital, Inc.*

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| In re: | Chapter 11 |
| GOSPEL WAY DELIVERANCE MINISTRIES, INC., | Case No. 19-41850 (CEC) |
| *Debtors*. | |

**JRK CAPITAL, INC.'S MOTION TO LIFT THE AUTOMATIC STAY**
**PURSUANT TO SECTION 362(d)(1), (d)(2) AND (d)(4) OF THE BANKRUPTCY CODE**

      JRK Capital, Inc. ("JRK"), by and through its counsel, hereby moves this court (the "Motion") pursuant to section 362(d) of title 11 of the United States Code (the "Bankruptcy Code") and rule 4001 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") for an order lifting the automatic stay in connection with a final judgment of foreclosure and sale with respect to mortgage defaults on two parcels of commercial and mixed use real property including one owned by the Debtor, located at 1060 Utica Avenue, Brooklyn, New York 11203 [Block 4734, Lot 23] (the "Utica Property"), and another property a few blocks away, owned by the heirs of two now deceased guarantors, located at 4713 Avenue D, Brooklyn, New York 11203 [Block 4768, Lot 43] (the "Avenue D Property" and with the Utica Property, the "Properties").  JRK also holds substantial first and second mortgages on the Utica Property and there is an open prior mortgage from 1999 on the Avenue D Property.

JRK relies on and incorporates herein by reference the (i) declarations of Rudy Kats (the "Kats Declaration"), dated April 30, 2019, filed contemporaneously herewith, and (ii) the proof of claim, filed by JRK and designated Claim No. 2 in this case, each in support of this Motion.

In further support hereof, JRK respectfully states as follows:

## PRELIMINARY STATEMENT

1.      JRK holds priority mortgages on, and a final foreclosure judgment of foreclosure and sale *from July 2013* (the "Judgment") against the Properties and the above-captioned debtor (the "Debtor").  As of the March 28, 2019 (the "Petition Date"), JRK held a claim in the amount of no less than $1,815,374.05 (*see* Claim No. 2 in this case).  The Debtor-owned Property—the Utica Property—is valued at approximately $675,000 to $725,000 and the Avenue D Property is valued at approximately $325,000 to $375,000 for a combined collateral value of $1,000,000 to $1,100,000.  (Kats Decl. ¶14.)

2.      JRK's claims arise from 2003 and 2004 notes were supposed to be one-year notes. Following default, they have remained in default or in foreclosure proceedings for a decade. Since those notes were signed and the money was loaned, the Debtor and one of its guarantors has been in and out of bankruptcy three times including this one and have made no payments in the interim.  Over more than 5 years, the Properties have been noticed for sale no less than five times including **January 23, 2014, April 3, 2014, October 23, 2014, August 4, 2016, and March 28, 2019**.  Each sale was temporarily stayed either by (i) a state court order to show cause that was ultimately denied or (ii) a bankruptcy filing.  The January 23, 2014 sale was stayed by a state court order to show cause, which stay was vacated a few weeks later by the state court in early March 2014.  The sale was rescheduled for April 3, 2014.  The first bankruptcy case was *In*

*re Gospel Way Church of God, Inc.*, Chapter 11 Case No. 14-41610 (CEC) filed April 2, 2014. That case was dismissed on motion of the United States Trustee in August 2014. A new sale was scheduled for October 23, 2014. Just before that rescheduled sale took place, Lorna Phynn, a guarantor, filed a personal chapter 13 under *In re Lorna Phynn*, Chapter 13 Case No. 14-45320 (NHL). In that case, the chapter 13 trustee moved to dismiss and the court determined to convert the case to chapter 7. The chapter 7 trustee was unable to locate any assets for distribution and Ms. Phynn was ultimately discharged and the case closed on March 30, 2016. A new sale was scheduled for August 4, 2016. On August 2, 2016, the Debtor obtained a new order to show cause in state court, purportedly to exercise its sale rights rather than have the properties sold in foreclosure. Clearly, the Debtor still owns the Properties, so it chose not to follow the path on which the OSC was based. While that OSC was pending a hearing during the fall of 2016, Ms. Phynn became incapacitated and the state court case went into abeyance pending appointment of a guardian ad litem. In early 2017, Ms. Phynn passed away. After substantial motion practice following her death, on February 4, 2019, the state court permitted JRK to sell the Properties at public auction. The sale was scheduled for March 28, 2019 and this new chapter 11 followed. (Kats Decl. ¶3.)

3.      No reorganization was effected in any of the prior cases. The original chapter 11 was dismissed and the chapter 13 was converted to 7 and no creditors were paid. The only result from these cases has been that the Debtor continued to enjoy the use of multiple Properties without paying the underlying mortgages and the amount due to JRK has skyrocketed over more than a decade. (Kats Decl. ¶4.)

4.      For the foregoing reasons and those set forth below, JRK submits stay relief pursuant to sections 362(d)(1), (d)(2), and (d)(4) for *in rem* relief is warranted here. The Debtor,

through endless litigation in state and federal court, has allowed the debt to balloon to over $1.8 million so the Debtor no longer has equity in the Properties and, in any event, *only owns the Utica Property*.  There are municipal charges and liens against Utica Property and substantial municipal charges against the Avenue D Property.  The Debtor is not a commercial entity capable of generating large sums of money for repayment of the debt or for adequate protection. The Properties are evidently not necessary to an effective reorganization that is in prospect under the standard sety forth in *Timbers*.[1]  Finally, the history of state court OSCs, all of which were ultimately denied, and the unproductive repeat bankruptcy petitions support a finding of a plan by the Debtor to purposefully delay or hinder JRK in the exercise of its state law rights and justifies the entry of an *in rem* order under section 362(d)(4).

## JURISDICTION AND VENUE

5.    The Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334.  Venue of this case and this Motion is proper pursuant to 28 U.S.C. §§ 1408 and 1409. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

6.    The statutory predicates for this Motion are sections 362(d)(1), (2) and (d)(4) of the Bankruptcy Code and Bankruptcy Rule 4001.

## BACKGROUND

### 2003 Note and Mortgages and Assignments of Rents and Leases

7.    On or about May 7, 2003, the Debtor's officers, on behalf of the Debtor, executed a mortgage note to Columbia Capital Co. in the principal amount of $245,000.00 (the "2003 Note") in consideration for a loan in that amount made by Columbia to Gospel Way.  (Kats Decl. ¶5, Ex. A.)

---

[1] *United Sav. v. Timbers of Inwood Forest*, 484 U.S. 365, 376 (1988).

8.      To secure the obligations under the 2003 Note, on the same date (i) the Debtor, through its officers on behalf of Gospel Way, executed a mortgage and assignment of rents and leases on the Debtor-owned Utica Property in favor of Columbia, which was recorded on March 10, 2004 at CRFN 2004000145806 (the "Utica First Mortgage"), and (ii) Kenneth Phynn and Lorna Phynn,[2] (together, the "Phynns") who are or were, upon information and belief, officers of Gospel Way, executed a collateral mortgage and assignment of rents and leases on the Phynn-owned Avenue D Property and on another parcel of residential real property owned by the Phynns located at 720 East 51st Street, Brooklyn, NY 11203 [Block 4771, Lot 19] (the "51st Street Property") in favor of Columbia, which collateral mortgage was also recorded on March 10, 2004 at CRFN 2004000145805 (the "First Collateral Mortgage"). (Kats Decl. ¶6, Exs. B and C.)  The Avenue D Property remains encumbered by a first mortgage from 1999 in favor of Household Finance Services (as may have been assigned). (Kats Decl. ¶6.)

**2004 Note and Mortgages**

9.      On or about August 16, 2004, the Debtor, on behalf of Gospel Way, executed a second mortgage note" to Columbia in the principal amount of $175,000.00 (the "2004 Note" and with the 2003 Note, the "Notes") in consideration for a loan by Columbia to Gospel Way in that amount.  (Kats Decl. ¶7, Ex. D.)

**Mortgages and Assignments of Rents and Leases**

10.     To secure the obligations under the 2004 Note, on the same date (i) the Debtor's officers, on behalf of Gospel Way, executed a second mortgage and assignment of rents and leases on the Utica Property in favor of Columbia (the "Utica Second Mortgage"), which was recorded on December 14, 2004, under CRFN 2004000768574, and (ii) the Phynns and Delphine Francis, respectively, executed mortgages on the Avenue D and 51st Street Properties (owned by

---

[2] Both of the Phynns are now deceased.

the Phynns), and on another residential property located at 473 East 52nd Street, Brooklyn, NY

11203 [Block 4724, Lot 52], owned by Delphine Francis (the "52nd Street Property") (which

collateral mortgages are collectively referred to herein as the "Collateral Mortgages"), which

were recorded  on December 14, 2004, under CRFN 2004000768576.  (Kats Decl. ¶8, Exs. E and

F.)

**Personal Guaranties**

11.     On or about May 7, 2003 and August 16, 2004, the Phynns and Ms. Francis each

executed and delivered to Columbia their personal guaranty of payment of the Notes.  (Kats

Decl. ¶9, Exs. G and H.)

**Defaults**

12.     As of September 1, 2005, Gospel Way defaulted under the terms of the Second

Note and Mortgages by failing to pay off the 2004 Note at maturity.  Gospel Way also failed to

pay annual loan extension fees, which were due in order to formally extend the maturity date

beyond the original maturity date of September 1, 2005.  Although the 2004 Note had matured

and the maturity date was not extended, Gospel Way continued to make interest payments at the

note rate through May 1, 2009. Gospel Way ceased making payments after its May 1, 2009

interest payment, which was received by JRK on August 12, 2009.  JRK has received no

payments from Gospel Way since then.  Neither the Debtor nor any of the other guarantors paid

any of Gospel Way's missed payments and accordingly, all guarantors are also in default under

the guaranties.  Accordingly, the full amount due under the 2004 Note and guaranty thereof

remains due and owing. (Kats Decl. ¶10.)

13.     Gospel Way then defaulted under the 2003 Note.  JRK has received no payments

from Gospel Way since the default under the 2003 Note began.  Neither the Debtor nor any of

the guarantors paid any of Gospel Way's missed payments.  Accordingly, the full amount due

under the 2003 Note and guaranty thereof remains due and owing, and all guarantors thereon, are in default under the guaranty of the 2003 Note.  (Kats Decl. ¶11.)

**Complaint Against Gospel Way, the Debtor and Guarantors**

14.　　As a result of the default under the 2004 Note and guaranties, on April 2, 2012, Columbia filed a foreclosure complaint in New York State Supreme Court for Kings County against the Debtor Gospel Way and the guarantors, captioned *Columbia Capital Co. v. Gospel Way Church of God, Inc. et al.*, Index No. 500717/2012.  Notably, although it was well within its rights to do so, JRK opted not to foreclose its rights with respect to the residential mortgages located on East 51st Street and East 52nd Street, owned by non-Debtor and pledged as security for the guaranty of the Notes.  (Kats Decl. ¶12.)

**Assignment from Columbia to JRKL**

15.　　On May 31, 2012, Columbia assigned its interests in the 2003 and 2004 Notes and related Mortgages and other documents including the guaranties to JRK.  JRK is the named plaintiff on the Judgment.  (Kats Decl. ¶13.)

**Judgment Entered**

16.　　On July 30, 2013, almost 6 years ago, the state court entered the Judgment on the 2004 mortgage and collateral mortgage.  (Kats Decl. ¶14, Ex. I.)  Because JRK elected not to foreclose on the residential property mortgages, this Judgment only affects the Utica and Avenue D Properties.

**Value of the Properties**

17.　　Both Properties are located in two-fare transit zones, each nearly a mile from the nearest subway station.  Based on more than 30 years of experience and a review of the comparable sales in that area, JRK's submits that the Debtor-owned Property, i.e., the Utica Property is valued at approximately $675,000 to 725,000.  The Avenue D Property is valued at

approximately $325,000 to $375,000 for a combined collateral value of $1,000,000 to

$1,100,000.  Further, ACRIS reflects that there is an unsatisfied first mortgage from 1999 on the

Avenue D Property and JRK holds the first and second mortgages on the Utica Property and the

first mortgage is substantial and in default.  (Kats Decl. ¶15.)

**Outstanding Municipal Charges Against the Properties and Insurance**

18.      JRK does not insure the Properties and does not have any proof of insurance.  As

of the date hereof, the Properties had outstanding municipal charges against them including

$4,710.15 in Real Property Income and Expense and Fire Department charges (Utica Property)

and the Avenue D Property has $1,494.65 in open taxes and $8,359.27 in open water charges.

According to Property Shark, the Utica municipal charges have become a lien in an unknown

amount.  (Kats Decl. ¶16, Ex. J.)

**RELIEF REQUESTED**

19.      JRK hereby seeks relief from the automatic stay pursuant to sections 362(d)(1),

(d)(2) and (d)(4) of the Bankruptcy Code and Bankruptcy Rule 4001 to pursue its state law

remedies and enforce its rights under the Judgment.

**Applicable Law**

20.      Section 362(a) of the Bankruptcy Code imposes an automatic stay of virtually all

actions against a debtor upon the commencement of a bankruptcy case.  11 U.S.C. § 362(a).

However, the "automatic stay is not meant to be absolute."  *In re The SCO Group, Inc.*, 395 B.R.

852, 856 (Bankr. D. Del. 2007) (citing section 362(d) of the Bankruptcy Code); 11 U.S.C. §

362(d).  Congress specifically set forth grounds for relief from the stay in, among others, sections

362(d)(1), (2) and (d)(4).

## Sections 362(d)(1), (d)(2) and (d)(4) of the Bankruptcy Code

21.    Section 362(d) of the Bankruptcy Code provides (in relevant part) that:

the Court *shall* grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay –

(1) for cause, including the lack of adequate protection of an interest in property of such party in interest[;]

(2) with respect to a stay of an act against property under subsection (a) of this section, if—
(A) the debtor does not have an equity in such property; and
(B) such property is not necessary to an effective reorganization[; and]

. . .

(4) with respect to a stay of an act against real property under subsection (a), by a creditor whose claim is secured by an interest in such real property, if the court finds that the filing of the petition was part of a scheme to delay, hinder, or defraud creditors that involved . . . —

(B) multiple bankruptcy filings affecting such real property;

If recorded in compliance with applicable State laws governing notices of interests or liens in real property, an order entered under paragraph (4) shall be binding in any other case under this title purporting to affect such real property filed not later than 2 years after the date of the entry of such order by the court, except that a debtor in a subsequent case under this title may move for relief from such order based upon changed circumstances or for good cause shown, after notice and a hearing. Any Federal, State, or local governmental unit that accepts notices of interests or liens in real property shall accept any certified copy of an order described in this subsection for indexing and recording.

11 U.S.C. §§ 362(d)(1), (2) and (4) (emphasis added).

## Section 362(g)

22.    Section 362(g) provides that on a motion for stay relief, the moving party, here JRK, bears the burden proof on a debtor's equity in the property at issue, and the party opposing relief, here the Debtor, bears the burden on *all* other issues.  11 U.S.C. § 362(g) (emphasis added).

**A.**    **Stay Relief is Warranted Pursuant to Sections 362(d)(1) and (2)**

Section 362(d)(1)

23.    JRK asserts cause exists to lift the automatic stay pursuant to section 362(d)(1) of

the Bankruptcy Code.  "Cause" exists because JRK is, among other things, not adequately

protected.  Except for lack of adequate protection, "cause" is not otherwise defined by section

362(d)(1). *Schneiderman v. Bogdanovich (In re Bogdanovich)*, 292 F.3d 104, 110 (2d. Cir.

2002).  Although cause for relief from the stay is not defined in the Bankruptcy Code, it is well

established that it is determined on a case-by-case basis, taking into account all of the

circumstances of each case. *See e.g., Laguna Assocs. Ltd. Partnership v. Aetna Casualty &

Surety Co. (In re Laguna Assocs. Ltd. Partnership)*, 30 F.3d 734, 737-38 (6th Cir. 1994) (internal

citations omitted).

24.    Here, "cause" exists because JRK lacks adequate protection of its collateral and

for other reasons.  First, the Debtor has not made payments on this debt in almost *ten* years.  The

only Debtor-owned Property, the Utica Property, is worth substantially less than the debt against

it and that is without even including priority municipal debts continue to accumulate against it

every day.  Such debts will or have turned into liens or in any event will take priority over JRK's

liens.  Even if you factor in the Avenue D Property, which the Debtor does not own, there is no

equity above the amount due to JRK.  The accumulation of municipal charges and interest

irreparably harms JRK with each passing day.  Those amount have become so high they can

never be recovered.  In short, there have been no payments in years and there is no equity

cushion here.  The Debtor would have to demonstrate a substantial equity cushion if it sought to

rely on that as a form of adequate protection.  To the best of JRK's knowledge, the Debtor does

not own any other unencumbered property that could serve as adequate protection.  JRK does not

insure the Properties and does not have any proof of insurance.  Insuring the building through

force placed insurance is very, very expensive and the cost of that insurance would never be recovered by JRK. It is patently prejudicial for the Debtor to have the benefit of the automatic stay while someone else insures the Properties, even if such costs were recoverable—which they clearly are not. In any event, it is the Debtor's responsibility to insure the Properties. Based on the foregoing, JRK lacks adequate protection of its interest in the Property.

25.     Here, the Debtor's failures, including at bare minimum to show proof of insurance and stay current with municipal charges, have diminished or threatened to diminish the value of the JRK's collateral.

> The secured creditor lacks adequate protection if the *value of its collateral* is declining as a result of the stay. It must, therefore, prove this decline in value or *the threat of a decline* in order to establish a prima facie case. Such 'threats' include the failure to maintain property insurance or the failure to keep the property in good state of repair.

*In re Elmira Litho, Inc.*, 174 B.R. 892, 902 (Bankr. S.D.N.Y. 1994) (emphasis added).

26.     Further, the Debtor's failure to make post-petition payments throughout three successive bankruptcies, (and that is in addition to the failure to make payments since 2009 and the prior decade of default and litigation) can also provide a basis to lift the stay.

> Without quantifying the decline in value, the creditor can often establish its prima facie case by demonstrating that the debtor has completely failed, or substantially failed, to make post-petition payments.

*In re Elmira Litho, Inc.*, 174 B.R. 892 (Bankr. S.D.N.Y. 1994) (citing, *In re Dacon Bolingbrook Associates, L.P.*, 153 B.R. 204, 208 (N.D. Ill. 1993) (continued failure to tender periodic payments)). Accordingly, stay relief for cause under section 362(d)(1) is warranted here.

Section 362(d)(2)

27.     Pursuant to section 362(d)(2) of the Bankruptcy Code, the stay "shall" be lifted if the debtor has no equity in the property and such property is not necessary to an effective reorganization. The Debtor here indisputably has no equity in the Property since the Debtor only

- 11 -

owns one property, the Utica Property, and it is worth substantially less, indeed less than half, than what the current debt is.  It is clear that there is no reorganization in prospect here and, indeed, no reorganization was apparently intended here.  Accordingly, the Property is not necessary to an effective reorganization that is reasonably in prospect under the standard set forth in *United Sav. v. Timbers of Inwood Forest*, 484 U.S. 365, 376.  Therefore, both conditions of 362(d)(2) are satisfied here.  Accordingly, for all of the reasons above, the automatic stay should be lifted pursuant to section 362(d)(2).

**B.      *In Rem* Relief Under Section 362(d)(4) is Warranted Here**

28.      Under the facts of this case, the Court is warranted in ordering *in rem* relief pursuant section 362(d)(4)(B) of the Bankruptcy Code.  This case was filed as the third bankruptcy case alternating between the obligor and guarantor within a five-year period.  None of the cases were duly prosecuted by the debtors.  The first chapter 11 was quickly dismissed on motion of the United States Trustee.  The first chapter 13 ended up converted to a chapter 7 almost immediately and then it stayed in chapter 7 for 15 months while the chapter 7 trustee looked for value that could be distributed on claims.  The trustee ultimately concluded there was no value that could be captured for creditors and cleared Ms. Phynn for a discharge.  With over $1.8 million in debt, it appears clear that this case was not filed with any feasible exit strategy. The Schedules and most basic chapter 11 documents were due on April 11th and are now long overdue and the time to file them has not been extended or even requested.  One can only conclude that this case was filed simply to delay and hinder JRK from enforcing its Judgment and conducting the very last step to 10-year default.  The filing history and the circumstances of this filing support the conclusion that the Debtor only sought to interfere with or delay the enforcement of the rights of its secured creditors and not for any other valid or realistic

restructuring goal.  Thus, the evidence here supports a finding of intent to delay or hinder JRK's valid state law rights and the issuance of a *in rem* stay relief order.  Absent such an order, it is clear that additional filings will continue each time with greater and greater debt.

## NOTICE

29.    Notice of this motion has been provided to (a) the Debtor, (b) Debtor's counsel, (c) the Office of the United States Trustee, (d) all creditors appearing on the creditor matrix, and (e) those parties, if any, who have appeared in this matter.  JRK asserts that no further notice is required.

## NO PRIOR REQUEST

30.    No prior request for the relief sought in this Motion has been made to this or any other Court.

**WHEREFORE**, for all of the reasons stated herein, JRK respectfully requests that this Court grant this Motion and issue the attached order (1) granting relief from the automatic stay pursuant to section 362(d)(1), (d)(2) and (d)(4) and Bankruptcy Rule 4001(a)(3); and (2) granting JRK such other and further relief as the Court deems just and proper under the circumstances.

Dated: May 2, 2019                RAVERT PLLC
       New York, New York

                              By: /s/ Gary O. Ravert
                                 Gary O. Ravert
                              116 West 23rd Street, Suite 500
                              New York, New York 10011
                              Tel: (646) 966-4770
                              Fax: (917) 677-5419

                              *Attorneys for JRK Capital, Inc.*